IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONNA CHAN, | No. C 13-0066 SI |
|     Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
|     v. | |
| COVENANT AVIATION SECURITY, | |
|     Defendant. | |

The motion for summary judgment filed by defendant Covenant Aviation Security, LLC came on for oral argument on December 10, 2013. Having considered the parties' motion papers, pleadings and arguments, the Court GRANTS defendant's motion for summary judgment.

**BACKGROUND**

Defendant Covenant has provided security services at San Francisco International Airport ("SFO") pursuant to a series of contracts with the United States Transportation Security Agency ("TSA") since 2002. Docket No. 26, Pugh Decl. ¶ 3. Covenant is responsible for both passenger screening and baggage screening at SFO. *Id.* Those services are performed by various categories of Screeners, Lead Screeners, and Supervisors. *Id.*

In 2002, plaintiff Donna Chan was hired by Covenant to work as a Screener at SFO. Docket No. 32-9, Chan Decl. ¶ 2. In 2003, after ten months, plaintiff was promoted to Lead Screener. *Id.*

In 2007, at the direction of TSA, Covenant implemented a program known as ADASP and created a new category of screeners known as ADASP Screeners.[1] Docket No. 26, Pugh Decl. ¶ 6. Although TSA did not require Covenant to have ADASP Supervisors, Covenant's Director of Operations at SFO, Jeffery Pugh, decided to create the position of ADASP Junior Supervisors to create opportunities for advancement among Covenant's employees. *Id.* ¶ 7; Docket No. 33-2, Mahoney Decl. Ex. 1 at 36. In 2007, plaintiff was promoted to the newly-created position of ADASP Junior Supervisor. ADASP Junior Supervisors were paid more than Screeners and Lead Screeners but not as much as other Supervisors, who were considered to have higher level positions. Docket No. 26, Pugh Decl. ¶ 7. Unlike Screeners and Lead Screeners, ADASP Junior Supervisors were not covered by a collective bargaining agreement. *Id.*

In early 2012, TSA reviewed the pricing of its contract with Covenant and decreased the funding available to Covenant through a Modification of Contract. Docket No. 32-3, Bifoss Decl. Ex. 2 at 46, 56-57. In April 2012, Covenant's upper management directed Mr. Pugh to identify supervisory and administrative positions that could be eliminated as part of a reduction in force. Docket No. 26, Pugh Decl. ¶ 8. After consulting with other members of site management, Mr. Pugh determined that the position of ADASP Junior Supervisor, which consisted of eight employees at the time, could be eliminated. *Id.* Mr. Pugh explains that he made this decision because the position was not required by TSA, and the ADASP Screeners could be supervised by Terminal Managers. *Id.*; Docket No. 33-2, Mahoney Decl. Ex. 1 at 37-38. Mr. Pugh states that he did not consider identity, age, disability status, or other personal characteristics in determining which positions could be eliminated. Docket No. 26, Pugh Decl. ¶ 9; *see also* Docket No. 32-3, Bifoss Decl. Ex. 2 at 70. On April 26, 2012, Covenant terminated the employment of all eight ADASP Junior Supervisors, including plaintiff. Docket No. 26, Pugh Decl. ¶ 8. In addition, seven other supervisory and administrative personnel were terminated at

---

[1] Mr. Pugh explains in his declaration that additional details about the ADASP program are considered Sensitive Security Information under federal law and may not be disclosed in his declaration. Docket No. 26, Pugh Decl. ¶ 6.

2

or about the same time.[2] Docket No. 32-5, Bifoss Decl. Ex. 4.

At the time plaintiff was terminated, she was sixty-three years old and was on medical leave due to hip replacement surgery. Docket No. 32-2, Bifoss Decl. Ex. 1 at 17, 19. Of the eight ADASP Junior Supervisors that were terminated, six were over the age of forty and three were on medical leave at the time of their termination. Docket No. 32-9, Chan Decl. ¶¶ 6-12; Docket No. 32-5, Bifoss Decl. Ex. 4. Only one ADASP Junior Supervisor was both under the age of forty and not disabled at the time of her termination. *Id.* Since plaintiff's termination, Covenant has not hired any ADASP Junior Supervisors and does not intend to hire any in the future. Docket No. 26, Pugh Decl. ¶ 12.

In late May of 2012, Covenant began seeking applicants to become part-time screeners in anticipation of increased needs during the summer travel season. Docket No. 33-3, Pugh Decl. ¶ 8. Only part-time screeners were being hired at this time. *Id.* Covenant offered priority hiring for these part-time positions to all the employees who had been terminated as part of the reduction in force, including plaintiff. Docket No. 26, Pugh Decl ¶ 11, Ex. 2.

On December 6, 2012, plaintiff filed a complaint in San Mateo County Superior Court against defendant Covenant, alleging causes of action for: (1) age discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) disability discrimination in violation of FEHA; (3) wrongful termination in violation of FEHA; (4) wrongful termination in violation of public policy; and (5) breach of implied contract of employment. Docket No. 1, Compl. On January 7, 2013, Covenant removed the action to this Court pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction. Docket No. 1, Notice of Removal. By the present motion, Covenant moves for summary adjudication of all of plaintiff's claims. Docket No. 23, Def.'s Mot.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The

---

[2] Specifically between April 27, 2012 and May 8, 2012, two Supervisors, an Account Clerk, a Scheduling Clerk, a Performance Support Analyst, a Claims Manager, and a Payroll Specialist were terminated. Docket No. 32-5, Bifoss Decl. Ex. 4.

3

moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). The evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

**I.    Plaintiff's Discrimination Claims**

Covenant moves for summary adjudication of plaintiff's claims for age discrimination, disability discrimination, wrongful termination in violation of FEHA, and wrongful termination in violation of

4

1 public policy.[3] Covenant argues that summary judgment is appropriate because plaintiff has failed to 2 establish a prima facie case of age or disability discrimination. Def.'s Mot. at 7-8. Covenant also argues 3 that even if plaintiff has established a prima facie case, Covenant has provided a valid, non-pretextual 4 reason for terminating plaintiff. *Id.* at 9-10.

5 "Because of the similarity between state and federal employment discrimination laws, California 6 courts look to pertinent federal precedent when applying [their] own statutes." *Guz v. Bechtel National,* 7 *Inc.*, 24 Cal. 4th 317, 354 (2000). In particular, California has adopted the three-stage burden-shifting 8 test established by the United States Supreme Court, the *McDonnell Douglas* test, for trying claims of 9 discrimination based on a theory of disparate treatment.[4] *Id.* The "*McDonnell Douglas* test reflects the 10 principle that direct evidence of intentional discrimination is rare, and that such claims must usually be 11 proved circumstantially." *Id.* at 354.

12 Under the *McDonnell Douglas* test, a plaintiff alleging disparate treatment must first establish 13 a prima facie case of discrimination. *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1123 (9th Cir. 14 2000). "The burden of production, but not persuasion, then shifts to the employer to articulate some 15 legitimate, nondiscriminatory reason for the challenged action. If the employer does so, the plaintiff 16 must show that the articulated reason is pretextual 'either directly by persuading the court that a 17 discriminatory reason more likely motivated the employer or indirectly by showing that the employer's 18 proffered explanation is unworthy of credence.'" *Id.* at 1123-24.

19 "As a general matter, the plaintiff in an employment discrimination action need produce very 20 little evidence in order to overcome an employer's motion for summary judgment. This is because 'the 21 ultimate question is one that can only be resolved through a searching inquiry—one that is most 22 appropriately conducted by a factfinder, upon a full record.'" *Id.* at 1124; *see Nazir v. United Airlines,* 23 *Inc.*, 178 Cal. App. 4th 243, 286 (2009)

24 To establish a prima facie case of discrimination, a plaintiff generally must "provide evidence

---

[3] Both of plaintiff's wrongful termination claims are premised on allegations that she was terminated because of her age and disability. *See* Compl. ¶¶ 31-32, 37-38.

[4] "'Disparate treatment' is intentional discrimination against one or more persons on prohibited grounds." *Guz*, 24 Cal. 4th at 354 n.20.

5

that (1) he was a member of a protected class, (2) he was qualified for the position he sought or was performing competently in the position he held, (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive." *Guz*, 24 Cal. 4th at 355; *accord Nicholson v. Hyannis Air Serv.*, 580 F.3d 1116, 1123 (9th Cir. 2009). Covenant concedes that plaintiff has satisfied the first three prongs of this test. Def.'s Mot. at 8. However, Covenant argues that plaintiff has failed to present any evidence suggesting a discriminatory motive. *Id.* In response, plaintiff argues that she has presented sufficient evidence because seven of the eight employees within plaintiff's eliminated classification were disabled and/or over the age of forty. Pl.'s Opp'n at 7. The Court concludes that resolution of this issue is unnecessary, because even assuming plaintiff has established a prima facie case of discrimination, Covenant has articulated a legitimate nondiscriminatory reason for the challenged action.

Covenant has presented evidence showing that in April 2012, it needed to cut costs at SFO based on TSA's Modification of Contract, and upper management directed Mr. Pugh, Covenant's Director of Operations at SFO, to identify supervisory and administrative positions that could be eliminated as part of a reduction in force. Docket No. 26, Pugh Decl. ¶ 8; Docket No. 32-3, Bifoss Decl. Ex. 2 at 46, 56-57. Mr. Pugh, who created the position of ADASP Junior Supervisor, states that he determined that the ADASP Junior Supervisor position could be eliminated, because the position was not required by TSA and ADASP Screeners could be supervised by Terminal Managers. Docket No. 26, Pugh Decl. ¶ 8. On April 26, 2013, all eight ADASP Junior Supervisors were terminated. *Id.* Although a reduction in force is not by itself a legitimate nondiscriminatory reason for terminating an employee, *see Guz*, 24 Cal. 4th at 358; *Diaz v. Eagle Produce, Ltd.*, 521 F.3d 1201, 1211-12 (9th Cir. 2008), an individualized non-class based explanation of why the plaintiff was part of the reduction in force is sufficient to satisfy defendant's burden of production under the *McDonnell Douglas* test. *See Diaz*, 521 F.3d at 1211-12. Because defendant has given a specific and credible non-class based explanation of why plaintiff was terminated as part of Covenant's reduction in force, Covenant has provided a legitimate nondiscriminatory reason for her termination.

Because Covenant has met its burden of proffering a legitimate reason for terminating plaintiff, "the burden now shifts back to [plaintiff] to put forth specific and substantial evidence" that defendant's

reason is really a pretext for discrimination. *Aragon v. Republic Silver State Disposal*, 292 F.3d 654, 661 (9th Cir. 2002); *see also Guz*, 24 Cal. 4th at 357-60 ("[Plaintiff]'s age discrimination claim under the FEHA cannot survive [defendant]'s motion for summary judgment unless the evidence in the summary judgment record places [defendant]'s creditable and sufficient showing of innocent motive in material dispute by raising a triable issue, i.e., a permissible inference, that, in fact, [defendant] acted for discriminatory purposes."). Plaintiff has failed to set forth such specific and substantial evidence.

The primary evidence plaintiff relies on to establish pretext is the fact that seven of the eight ADASP Junior Supervisors that were terminated were disabled and/or over the age of forty. Pl.'s Opp'n at 9. The Ninth Circuit has cautioned that "statistical evidence in a disparate treatment case, in and of itself, rarely suffices to rebut an employer's legitimate, nondiscriminatory rationale for its decision to dismiss an individual employee. This is because a company's overall employment statistics will, in at least many cases, have little direct bearing on the specific intentions of the employer when dismissing a particular individual." *Aragon*, 292 F.3d at 663 n.6. To create a triable issue of fact, the statistics must show a stark pattern of discrimination unexplainable on grounds other than age or disability. *Schechner v. KPIX-TV & CBS Broad., Inc.*, 686 F.3d 1018, 1024 (9th Cir. 2012); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1283 (9th Cir. 2000).

The statistics relied on by plaintiff do not show a stark pattern of discrimination. First, plaintiff's statistical evidence is drawn from too small a sample size, eight employees. The Ninth Circuit has explained that "statistical evidence derived from an extremely small universe . . . has little predictive value and must be disregarded." *Aragon*, 292 F.3d at 663; *see also Guz*, 24 Cal. 4th at 367-68 ("[W]here alleged numerical favoritism of younger workers arose within an extremely small employee pool, courts have rejected any consequent inference of intentional bias on grounds, among others, that the sample was too minuscule to demonstrate a statistically reliable discriminatory pattern."). "The problem with small labor pools is that slight changes in the data can drastically alter appearances." *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1076 (9th Cir. 1986). Second, plaintiff's statistics improperly combine the two protected classes. The two protected classes should be analyzed separately. When analyzed separately, plaintiff's statistics show that only three of the eight ADASP Junior Supervisors were on disability leave at the time of termination, and although six of the eight ADASP

Junior Supervisors were over the age of forty, two were significantly younger—29 and 31 years old respectively. *See* Docket No. 32-9, Chan Decl. ¶¶ 6-12; Docket No. 32-5, Bifoss Decl. Ex. 4.  Third, while "statistics have a place in disparate treatment cases, their utility depends on all of the surrounding facts and circumstances." *Aragon*, 292 F.3d at 663 (internal quotations omitted).  Here, plaintiff has failed to provide the Court with sufficient surrounding facts and circumstances to place her statistical evidence in the proper context.  Plaintiff has not provided the Court with the age and disability status of the other Covenant employees that were terminated as part of the downsizing, and the age and disability status of the other Covenant employees at SFO who were not terminated during the downsizing. *See Sengupta*, 804 F.2d at 1076 ("The impact of a practice on the protected class should generally be measured against the actual pool of employees affected by that practice.").  The failure to provide this information is important.  For example, Covenant has provided the Court with evidence showing that at the time of the downsizing, Covenant had 151 employees at SFO who were on FMLA leave or worker's compensation leave, yet only three of those 151 employees were ADASP Junior Supervisors who were terminated as part of the reduction in force.  Docket No. 33-3, Pugh Decl. ¶¶ 4-5. These additional facts severely weaken plaintiff's statistics.  That three of 151 employees on leave were terminated does not show a stark pattern of discrimination.  Indeed, both the Ninth Circuit and the California Supreme Court have found similar statistical evidence to be insufficient to create a triable issue of fact at the third step of the *McDonnell Douglas* test. *See Aragon*, 292 F.3d at 663 (finding insufficient "the fact that three of the four casuals singled out for lay off that night were white"); *Guz*, 24 Cal. 4th at 366-68 (finding insufficient the fact that "[plaintiff], then age 49, and three of the other five BNI-MI employees (respectively ages 50, 45, and 44) were terminated by [the defendant] after that unit's elimination, while the only two persons retained, Wraith, age 41, and Siu, age 34, were the youngest of the group").[5]  Accordingly, the Court concludes that plaintiff's statistical evidence, "which 'stand[s] precariously unsupported by other probative evidence of . . . discrimination,' fall[s] short of

---

[5] The Court notes that the evidence in *Guz* that the California Supreme Court found insufficient to create a triable issue of fact is more persuasive than the evidence in the present case.  In *Guz*, one non-member of the protected class from the eliminated unit was retained by the defendant.  24 Cal. 4th at 366.  In contrast, here all members of the eliminated unit were terminated, including at least one person who was not a member of either protected class. *See* Docket No. 32-9, Chan Decl. ¶¶ 6-12; Docket No. 32-5, Bifoss Decl. Ex. 4.

8

constituting substantial and specific evidence of . . . discrimination."[6] *Aragon*, 292 F.3d at 663.

In a further attempt to establish pretext, plaintiff also notes that immediately prior to her termination, Covenant promoted four individuals younger than plaintiff to the position of Lead Screener, and after plaintiff's termination, Covenant has promoted ten individuals to the position of full-time Supervisor, only three of whom were over the age of forty. Pl.'s Opp'n at 3, 9 (citing Docket No. 32-6, Bifoss Decl. Ex. 5). Plaintiff argues that she can establish an inference of discrimination by showing that others not in her protected class were treated more favorably. *Id.* at 9. However, to establish pretext, plaintiff must present evidence showing not only that these other employees were treated more favorably, but also that they were similarly situated to her. *See Vasquez v. County of Los Angeles*, 349 F.3d 634, 641 (9th Cir. 2003) ("A showing that the County treated similarly situated employees outside Vasquez's protected class more favorably would be probative of pretext."); *see also Guz*, 24 Cal. 4th at 366 ("In the context of a work force reduction, . . . [plaintiff] need only show, prima facie, that persons significantly younger, but otherwise similarly situated, were treated more favorably." (internal quotation marks omitted)). Plaintiff has failed to present any evidence showing that the promoted employees were similarly situated to her. To the contrary, the evidence before the Court shows that the individuals were employed as Screeners or Lead Screeners and, thus, were not similarly situated to plaintiff, who was employed as an ADASP Junior Supervisor. *See* Docket No. 32-4, Bifoss Decl. Ex. 3 at 12, 18, 51; Docket No. 32-3, Bifoss Decl. Ex. 2 at 33; Docket No. 26, Pugh Decl. ¶ 7; *Vasquez*, 349 F.3d at 641 ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct. . . . Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees.").

Finally, plaintiff argues that there is evidence of pretext because a month after she was terminated, Covenant offered her a lower level part-time position. Pl.'s Opp'n at 7, 9. Plaintiff argues

---

[6] At the hearing, plaintiff argued that an employer cannot specifically target a unit within the company that consists primarily of members of a protected class and decide to eliminate that unit because most of its members are either disabled or over the age of forty. The Court agrees. However, in the present case, there is absolutely no evidence in the record showing that Covenant decided to eliminate the position of ADASP Junior Supervisor because most of the employees in that position were disabled or over the age of forty. The only evidence in record shows that the position was eliminated because it was not required by TSA and ADASP Screeners could be supervised by Terminal Managers. Docket No. 26, Pugh Decl. ¶ 8.

9

that this offer of employment was a de facto demotion to a position with less hours and less seniority. However, recharacterizing Covenant's adverse employment action as a demotion rather than a termination is not evidence of pretext. An adverse employment action is an adverse employment action regardless of how it is characterized, and an adverse employment action by itself is insufficient to establish discriminatory motive. *See Guz*, 24 Cal. 4th at 355 ("Generally, the plaintiff must provide evidence that . . . (3) he suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) *some other circumstance* suggests discriminatory motive." (emphasis added)). Moreover, the later offering of a lower level part-time position in anticipation of the summer travel season does not challenge the credibility of Covenant's explanation of its need to downsize and its decision to eliminate the position of ADASP Junior Supervisor as part of that downsizing. *See Vasquez*, 349 F.3d at 642 ("To show pretext using circumstantial evidence, a plaintiff must put forward specific and substantial evidence challenging the credibility of the employer's motives.").

In sum, plaintiff has failed to put forth specific and substantial evidence showing that Covenant's proffered legitimate nondiscriminatory reason for terminating plaintiff is really a pretext for discrimination. Accordingly, the Court grants Covenant's motion for summary judgment of plaintiff's claims for age discrimination, disability discrimination, wrongful termination in violation of FEHA, and wrongful termination in violation of public policy. *See Guz*, 24 Cal. 4th at 362 ("[S]ummary judgment for the employer may . . . be appropriate where, given the strength of the employer's showing of innocent reasons, any countervailing circumstantial evidence of discriminatory motive, even if it may technically constitute a prima facie case, is too weak to raise a rational inference that discrimination occurred.").

## II. Plaintiff's Claim for Breach of Implied Contract

Covenant argues that plaintiff's claim for breach of implied contract fails as a matter of law because plaintiff's employment was governed by an express written agreement stating that plaintiff's employment was terminable at-will. Def.'s Mot. at 12-14. In response, plaintiff argues that an implied contract limiting at-will termination was created through Covenant's course of conduct. Pl.'s Opp'n at 10.

California Labor Code section 2922 provides: "An employment, having no specified term, may be terminated at the will of either party on notice to the other." Under this statute, "in the absence of any evidence of the duration or term of employment under a written or oral agreement, there is a statutory presumption that employment is terminable at will, and a contract of employment may be ended at any time at the option of either party." *Eisenberg v. Alameda Newspapers, Inc.*, 74 Cal. App. 4th 1359, 1386 (1999). "An at-will employment may be ended by either party 'at any time without cause,' for any or no reason, and subject to no procedure except the statutory requirement of notice." *Guz*, 24 Cal. 4th at 335.

"This presumption of at-will employment may be rebutted only by evidence of an express or implied agreement between the parties that the employment would be terminated only for cause." *Eisenberg*, 74 Cal. App. 4th at 1386. "To raise a triable issue of material fact and defeat an employer's motion for summary judgment based on the presumption of at-will employment, a plaintiff must produce competent evidence of an agreement that he or she could not be discharged without good cause." *Id.* at 1387.

In support of its motion for summary judgment, Covenant has provided the Court with several documents signed by plaintiff stating that her employment was terminable at-will, including her initial offer letter, her employment application, and her offer letter for the position of ADASP Junior Supervisor. Docket No. 24, Pugh Decl. Exs. 3-10. "[T]hese signed documents provide strong evidence in support of the statutory presumption that [plaintiff]'s employment . . . was terminable at will." *Eisenberg*, 74 Cal. App. 4th at 1388. In her opposition, plaintiff argues that there was an implied contract based on Covenant's course of conduct because over the course of her employment, she received glowing performance reviews and Covenant gave no indication that her position was at risk. Pl.'s Opp'n at 10. However, "an employee's mere passage of time in the employer's service, even where marked with tangible indicia that the employer approves the employee's work, cannot alone form an implied-in-fact contract that the employee is no longer at will." *Guz*, 24 Cal. 4th at 341-42. Plaintiff offers no evidence of an actual promise by Covenant that she would be employed for a specific term or as long as she was doing a good job, or that she could only be terminated for good cause. *See Eisenberg*, 74 Cal. App. 4th at 1389. "Because [plaintiff's] conclusory assertions fail to provide the

factual evidence necessary to overcome the presumption of at-will employment, they are insufficient as a matter of law either to controvert that presumption, or to support a cause of action for breach of implied-in-fact contract." *Id.* at 1390. Accordingly, the Court grants Covenant's motion for summary judgment of plaintiff's claim breach of implied contract. *See Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (stating that an element of a cause of action for breach of contract is the existence of a contract).

## CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. Docket No. 23.

**IT IS SO ORDERED.**

Dated: January 13, 2013

SUSAN ILLSTON
United States District Judge